538 A.2d 4

**Sandra L. GARDNER, Appellee,**

v.

**Larry P. GARDNER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1987.

Filed Jan. 6, 1988.

Reargument Denied Feb. 24, 1988.

O. Howard Mummau, York, for appellant.

Marc A. Roberts, York, for appellee.

Before CAVANAUGH, BROSKY and WATKINS, JJ.

CAVANAUGH, Judge:

In this appeal at No. 680 Harrisburg, 1986, the issue is whether in a petition to terminate support, the alleged father against whom the support order was entered, from which an appeal to this court was nol prossed, may be granted on the grounds that the petitioner was not in fact the child's father.

The facts and procedure in this case are quite complex and must be stated for an understanding of the issue involved. On February 14, 1971, Sandra Gardner (at that time Sandra Crone), who was the appellee herein, gave birth to a daughter, Angela. At that time Ms. Gardner was married to Robert Crone. The child was originally given the surname, Gilbert, the appellee's maiden name, as she did not believe that Mr. Crone was the father of her child. The birth certificate for Angela Gilbert named the father as Jeff Eugene Johnson, whom the mother believed was Angela's father.

The appellee testified that before Angela was born, that she had sexual relations with Larry Gardner. Her testimony in this respect was as follows:

Q. When you became pregnant, did you tell Larry? Did Larry know you were pregnant pretty soon after you found out?

A. I think I was three month after I found out, and yes, I did tell Larry.

Q. What was his reaction?

A. I guess he was happy.

Q. Did you tell Larry that he was the father of this child?

A. No.

Q. What did you tell him?

A. I told him I was pregnant.

Q. Well, did you tell him anything about who the father was?

A.  I told him that there was … I tried to be very candid with him.  I told him that there was a time span in between there that there was a possibility the child could have been Jeff's.  I did not know.

Q.  When you say Jeff, you mean Jeff Johnson?

A.  Yes.

Ms. Gardner was divorced from Mr. Clone and on August 5, 1972 she and Larry Gardner, the appellant herein, were married.  In December, 1973, the appellant signed a "Change in Civil Status Form" which noted his name as the father of Angela Gilbert and Sandra Gilbert as the mother. The original birth certificate listed Jeff Eugene Johnson as the father.  In 1974 the parties had a son Lanny Gardner who is not involved in these proceedings.

The parties separated in 1979 and the appellee filed a petition for support for herself and Angela Gardner.  On August 3, 1979 an order for support of Angela was entered by the court below by Buckingham, J.[1]  The appellant took an appeal to this court from the order of support which was nol prossed in February, 1980, as the appellant failed to proceed with the appeal.[2]  In the support proceedings, the appellant did not raise the issue of paternity.  The appellant was represented by counsel in the initial support proceedings.

1.  The order of August 3, 1979 stated in part:
    ORDER
    That retroactive to and commencing with Saturday, June 23, 1979, the Defendant shall pay to the Domestic Relations Office for the support of his wife, Sandra L. Gardner, the sum of One Hundred Dollars ($100) a week, and for the support of his child, Angela, born February 14, 1971, the sum of One Hundred Dollars ($100) to continue weekly thereafter until further Order of Court.

2.  The court below filed a memorandum opinion dated October 17, 1979 in accordance with Pennsylvania Rule of Appellate Procedure 1925(a) in which it was stated "The defendant has appealed from our order requiring him to pay One Hundred Dollars a week for the support of his wife and One Hundred Dollars a week for support of one of his children, Angela."  The opinion goes solely to the issue of whether the support order was too high and in no way indicates a denial of paternity by the appellant.

The appellant complied with the support order for Angela. However, in January, 1985, the appellee sought an increase in child support. In May, 1985, the appellant through counsel filed a "Petition for Termination of Support" in which he alleged for the first time that he was not Angela's father.[3] The appellant also sought to have blood tests taken to determine paternity. The petition was dismissed and no appeal was taken from the order of dismissal.[4]

In January, 1986, the appellant, through counsel, filed a second "Petition for Termination of Support". In these proceedings he was represented by new counsel who is also counsel on appeal. The petition alleged that the first time that the support order was "grounded on both fraud and mutual mistake" in several respects including the allegation in (a):

  a) Petitioner and Respondent were not personally acquainted at the time Angela Gardner was born to Respondent in 1971. There has never been any ques-

3. The appellant alleged in paragraph 6 of his first petition to terminate support:
  6. Petitioner was informed prior to, and during his marriage to the Respondent, that he was not the natural father of Angela Gardner. Petitioner was also informed of the identity of the child's natural father by the Respondent on several occasions. Information supplied by Respondent as to the identity of the natural father was confirmed by Petitioner several times in conversations he had with the natural father.

4. The order of Buckingham, J. was as follows:
  Under the circumstances, on the offer of proof presented to this Court, we enter the following Order: That the Defendant's petition to terminate the support order in this case is dismissed. This is because the record indicates that an Order was entered against the Defendant for the support of a child, he paid the Order, at least for some period of time, and now attempts to disclaim paternity saying that he has information that he has been told that he is not the father of the child and that somebody else will come in and testify that he is the father of the child.
  My recollection of the case law is that despite all this, collateral or equitable estoppel applies and the Defendant is now precluded from raising the question of paternity, and that is the reason for our Order.

tion for either Petitioner or Respondent that Petitioner is not the natural father of Angela Gardner.

■ The petition also requested that blood tests be ordered pursuant to the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S. § 6131 et seq. The court below, through Horn, J., denied the petition for termination of support by order of October 6, 1986. The appellant has taken an appeal from that order.[5] The basis for the decision of the court below was that the order of support of August 3, 1979 was res judicata as to the issue of paternity of Sandra Gardner. The doctrine of res judicata provides that a final judgment or order entered by a court of competent jurisdiction in the absence of fraud or collusion is conclusive of facts litigated, or that could have been litigated, as to the parties in all other actions in the same jurisdiction. *Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Super. 225, 464 A.2d 1313 (1983). In order for the doctrine of res judicata to apply, there must be a coalescence of (1) identity of cause of action; (2) identity of persons to the action; (3) identity of the quality or capacity of the parties and (4) identity of the thing sued upon. *Brandschain v. Lieberman*, 320 Pa.Super. 10, 466 A.2d 1035 (1983). The appellant does not challenge the existence of any of the identities and a challenge would not have been sustained. The entry of the support order established by implication that the appellant was Angela's father.[6] We

5. The order of October 6, 1986 by Horn, J. stated:
   ORDER
   AND NOW, TO WIT, this 6th day of October, 1986, the Petitioner's Motion to Bifurcate the Trial on Termination of Support and to First Conduct a Trial by Jury on the Issue of Paternity, and the Petition for Termination of Support are dismissed and denied on the basis of claim preclusion.

6. In *Mitchell v. Randall*, 368 Pa.Super. 421, 534 A.2d 508 (1987) we held that the doctrine of res judicata does not apply to bar a petition for confirmation of paternity where a prior petition for visitation filed by the same individual was denied, as an action brought on a petition for visitation and a petition to confirm paternity are distinct causes of action involving separate issues. Clearly, a denial of visitation rights is not a determination that the petitioner is not the father, as visitation may be denied on many grounds other than lack of paternity. In

stated in *Commonwealth ex rel Nedzwecky v. Nedzwecky*, 203 Pa.Super. 179, 182, 199 A.2d 490, 491 (1964):

> [It was] implicit in the entry of the original support order that appellant was the father ... In the absence of an appeal from that order, the fact of appellant's paternity ... became established as a matter of law. A relevant fact necessarily determined as a prerequisite to the entry of an original support order may not, under the doctrine of res judicata, be challenged or put at issue in any subsequent proceeding. *Cf. Commonwealth ex rel. Howard v. Howard*, 138 Pa.Super. 505, 508, 10 A.2d 779.

We upheld the refusal of the court below to permit blood tests for a petitioner who denied paternity of a child whom he had previously been ordered to support. The appellant in *Nedzwecky, supra,* argued, to no avail, that at the time of the original order requiring him to support his alleged son, that he could not apply for blood tests under the statute then in effect. We note in the instant case that the Uniform Act on Blood Tests was in effect at the time of the original support proceedings and the appellant could have petitioned for a blood test if he wanted to dispute his paternity.

*Commonwealth ex rel Palchinski v. Palchinski*, 253 Pa.Super. 171, 384 A.2d 1285 (1978) applied *Nedzwecky, supra.* We stated at 253 Pa.Super. 174–5, 384 A.2d 1287: "If a party wishes to challenge a finding of paternity, he must do so by appealing directly from the support order. In the absence of an appeal, a finding of paternity is established as a matter of law." While the appellant took an appeal to the court from the order of August 3, 1975, it was nol prossed by this court and in effect an appeal was not taken.

■ This court recently held in *Manze v. Manze*, 362 Pa.Super. 153, 523 A.2d 821 (1987) that once an order for support is entered and no appeal is taken, the putative father cannot assert his lack of paternity as a basis for

*Mitchell v. Randall, supra,* there was no determination of paternity at the conclusion of the hearing on visitation.

terminating support payments notwithstanding that blood tests showed that he was not the natural father. We stated at 362 Pa.Super. 159–60, 523 A.2d 824:

> In the instant case, the issue of paternity was determined in December of 1980 when appellant chose to enter into a court order to support Deborah. Appellant could have demanded blood tests at that time but neglected to do so. As pointed out by the trial court, while appellant may not have known of his inability to procreate at the time he signed the support order, he was aware of other circumstances surrounding appellee's pregnancy which gave him reason to question Deborah's paternity. Having entered into the support order under these circumstances and having failed to appeal, appellant may not now challenge paternity.

See also *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 472 A.2d 1128 (1984); *Barclay v. Barclay*, 367 Pa.Super. 529, 533 A.2d 143 (1987).

The appellant acknowledges the general law that in support proceedings the issue of paternity is res judicata in the absence of an appeal from the order of support. However, he argues that he may now question paternity after the passage of several years on the grounds of fraud, mistake and ineffective assistance of counsel. He argues that he was entitled to effective assistance of counsel when the support order of August 3, 1979 was entered. He bases his argument on our decision in *Banks v. Randle*, 337 Pa.Super. 197, 486 A.2d 974 (1984). In that case, Stella Banks brought an action to determine support and/or paternity concerning her daughter. The putative father denied paternity and requested a blood test. A jury trial was held attended by defense counsel, but not by the defendant. The jury's verdict determined that the appellant, William Randle, was the father. On appeal, we decided that the appellant may raise the issue of ineffective assistance of counsel in an appeal from a civil proceeding in paternity. The basis for the decision in *Banks v. Randle* was our opinion in *Corra v. Coll*, 305 Pa.Super. 179, 451 A.2d 480 (1982) which

held that in a civil paternity case indigent defendants have a constitutional due process right to appointed counsel. In *Corra v. Coll, supra,* the defendant denied paternity and requested counsel which was denied. Both of these cases involved a disputed issue of paternity. 42 Pa.C.S. § 6704(g) which was repealed by the Act of October 30, 1985 P.L. 264, No. 66 § 3, was in effect at the time of the original support proceedings in our case and provided:

(g) Trial of paternity.—*Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the court without a jury unless either party demands trial by jury.* The trial, whether or not a trial by jury is demanded, shall be a civil trial and there shall be no right to a criminal trial on the issue of paternity. The burden of proof shall be by a preponderance of the evidence.

1978, April 28, P.L. 202, No. 53, § 10 (88), effective June 27, 1978. As amended 1980, Oct. 5, P.L. 693, No. 142 § 207(a), effective in 60 days.[7]

The appellant contends in his second petition to terminate support that "Petitioner and Respondent were not personally acquainted at the time Angela Gardner was born to Respondent in 1971." Since the appellant claims he did not know Sandra Gardner prior to the time that her daughter, Angela was born, he was certainly aware at the time of the support proceedings that he was not Angela's father.[8] Sandra Gardner testified on deposition that she told the appellant when she was pregnant, but that Jeff Johnson might be the father of the child.

Mr. Johnson testified that Sandra indicated to him that she thought he was the father of her child.[9] It is important

---

7. At present, the proceedings pertaining to support and paternity are found in Pa.R.C.P. 1910.1 et seq., entitled Actions for Support. Pa.R.C.P. 1910.15 deals with issues of paternity.

8. The appellant also alleged in his brief at page 15: "At the time Larry Gardner married Sandra he was aware that Jeffrey Johnson was the father of Angela and that was so indicated on her birth certificate."

9. Appellant contends that Jeff Johnson is Angela's father. Mr. Johnson testified:

to note that all of the above testimony referred to took place on depositions taken many years after the original support proceedings.

■ Although today the proceedings pertaining to support and paternity are found in the Pennsylvania Rules of Civil Procedure, the civil-criminal distinction is unavailing in determining whether competent counsel is constitutionally required. Where paternity is denied and a trial is held on that issue, such counsel is necessary. See *Banks v. Randle, supra.* We decline to extend the requirement of effective assistance of counsel to the situation where a defendant does not deny that he is the father of the child when an action for support for the child is brought. In the case before us the issue of paternity was never raised in the original support proceeding and the appellant defended only on the grounds that the support was too high. He had the opportunity to deny paternity had he so desired, but chose not to do so. We hold that only where there is a trial on a disputed issue of paternity, is the putative father entitled to counsel. To hold otherwise would be tantamount to providing the right to appointed counsel in support cases. This has never been the law.

■ The appellant also contends that the support order was based on fraud and mutual mistake as to circumstances "documenting" his paternity. The appellant relies on *R.J.K. v. B.L.*, 279 Pa.Super. 71, 420 A.2d 749 (1980) to support his argument that questions of fraud and mistake can be raised at this late date to challenge the support order entered in 1979. In that case, the court stated, "It is well settled that entry of a court order for support of a child

Q. Were you aware during the time that you were seeing Sandra that she was having any kind of a relationship with another man?
A. No.
Q. So you were not aware if or if she was not seeing Larry Gardner.
A. She knew him.
Q. She knew Larry Gardner?
A. I introduced them.
Q. Oh, you introduced Sandra?
A. Yes.

necessarily determines the issue of paternity." The court further stated at 279 Pa.Super. 74–75, 420 A.2d 751:

Assuming the support order did constitute an admission of paternity, appellant next contends that the trial judge erred in refusing to permit introduction of evidence contesting that conclusion of fact. However, as a final decree, a support order can only be attacked on direct appeal. *Armstead v. Dandridge*, 257 Pa.Super. 415, 390 A.2d 1305 (1978); *Commonwealth ex rel. Palchinski v. Palchinski, supra.* No appeal from either support order was ever pursued in this case. The doctrine of res judicata now operates to foreclose any subsequent challenge on the issue of paternity. *Commonwealth ex rel. Nedzwecky v. Nedzwecky, supra.*

The fact that both support orders were consensual and not the result of a full evidentiary hearing makes them no less final and no more subject to challenge.

The court added by way of dicta that: "Allegations of fraud or mutual mistake would provide the only bases upon which a court would review such a final decree. *Baran et al. v. Baran, supra* "[10] 279 Pa.Super. 75, 420 A.2d 751. The appellant does not indicate any fraudulent conduct on the part of appellee that would have prevented him from denying paternity at the original support proceedings. The fraud alleged is that appellant's first counsel gave him incorrect legal advice. Referring to the support proceed-

---

**10.** *Baran v. Baran*, 166 Pa.Super. 532, 72 A.2d 623 (1950) involved an action in equity brought by minority stockholders. A consent decree was entered without a hearing. This court stated at 166 Pa.Super. 537, 72 A.2d 625:

The consent decree derived its efficacy from the agreement of the parties and the approval of the chancellor. It bound the parties with the same force and effect as if a final decree had been rendered after a full hearing upon the merits. A decree entered by consent of the parties is so conclusive that it will be reviewed only on a showing that an objecting party's consent was obtained by fraud or that it was based upon a mutual mistake.

This does not support the theory that a support order can be challenged at any time on the grounds of fraud, where the putative father is aware of the circumstances surrounding the birth of the child, and the fraud alleged is that of the putative father's own attorney.

ings in 1979, appellant states in his appellate brief at page 5: "At the time, Larry and Sandra were embroiled in a custody battle for their son, Lanny, and Larry's attorney advised him not to raise the issue of Angela's paternity during the custody battle. He told Larry that this could be taken care of later." We fail to see how counsel's advice or misadvice, if it be so, can be held to amount to fraud.

With respect to mistake, there is no indication that appellant was mistaken as to his status concerning Angela's paternity. The appellant did not raise the question of fraud or mutual mistake in an appeal to this court as the appeal was abandoned, nor was it raised in the first petition for termination of support. We conclude that the court below properly dismissed the petition to terminate on the grounds of res judicata.

■ The appeal at 0179 Harrisburg, 1987, is from an order of the court of March 26, 1987, holding the appellant in contempt of court for failing to comply with an earlier support order in the amount of $96.00 per week. It was also agreed at the contempt hearing on March 26, 1987 that there were arrearages owed by the appellant for support for Angela in the amount of $10,691.60. The following took place at the contempt hearing:

BY MR. ROBERTS: (Attorney for appellee)

Q. Let me ask you this, Mr. Gardner. I am trying to get into what your true feelings are about this, if you misunderstand my question I will try to do a better job rephrasing it. If there were a way you could satisfy the court you were acting in good faith and yet also satisfy your goal that Sandra Gardner shouldn't get any of your money, you would be willing to go along with that, wouldn't you?

A. No, if I understand the question, let me tell you in language terms, okay. In all due respect, I'm not paying anything until I have expended every possible legal avenue there is to go.

Q. You mean to say that if we could establish an escrow account for you to pay fifty dollars ($50.00) a week into

and you would have been given absolute assurance that money wouldn't be touched by Sandra Gardner until all your appeals were exhausted and Sandra Gardner won, and you wouldn't be willing to go that way?

A. *Let me make this simple, in all due respect [sic] nothing am I paying under any circumstances or any given—I'm not going to do it.* (Emphasis added)

There is no doubt that the appellant willfully failed to comply with the support order. Contempt proceedings are civil in nature and the court following a hearing in which it determined that the respondent had wilfully failed to comply with a previously entered support order, properly imposed a coercive, conditional sentence for contempt. *Commonwealth ex rel. Heimbrook v. Heimbrook*, 295 Pa.Super. 300, 441 A.2d 1242 (1982). The order set forth a manner in which the appellant could be purged of contempt and in fact the appellant did purge himself of contempt and was released from incarceration.

■ The appellant argues that the order of January 26, 1986 to pay $96.00 per week entered by Judge Roe, who subsequently died, was only a temporary order and could not be the subject of a contempt proceeding. This argument is without merit. The Civil Procedural Support Law, 23 Pa.C.S. § 4345 provides:

§ 4345. Contempt for noncompliance with support order

(a) General rule.—A person who willfully fails to comply with any order under this chapter ... may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(1) Imprisonment for a period not to exceed six months.

(2) A fine not to exceed $500.

(3) Probation for a period not to exceed six months.

(b) Condition for release.—An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

1985, Oct. 30, P.L. 264, No. 66 § 1.

The order of the court complied with the law and will be affirmed. Even though the order of Judge Roe may have been temporary, as appellant alleges, it was nevertheless the proper basis for the entry of a contempt order based on noncompliance. The fundamental basis for imprisonment for failure to support, is the contemptuous disregard of the court's authority. *Commonwealth ex rel. Taylor v. Keenan*, 173 Pa.Super. 418, 98 A.2d 460 (1953).

■ Finally, the appellee contends that she is entitled to further costs under Pa.R.A.P. 2744 on the grounds that the appeal is frivolous and that the conduct of the appellant in taking the appeal is vexatious. Considering the complex nature of these proceedings, we find that the appeal is neither frivolous nor vexatious, and accordingly we shall impose no additional costs on the appellant under the Pennsylvania Rules of Appellate Procedure.

Order at appeal 680, Harrisburg 1986 affirmed and order at appeal 179, Harrisburg 1987 affirmed.