Kelly SEKOL

v.

Alan DELSANTRO.

Appeal of Paul J. Sekol, Sr.

Superior Court of Pennsylvania.

Argued Oct. 18, 2000.
Filed Nov. 21, 2000.

David J. Gnall, Taylor, Robert M. Buttner, Scranton, for appellant.

James J. Conaboy, Scranton, for Kelly Sekol, appellee.

Gerard M. Karam, Scranton, for Delsantro, appellee.

BEFORE: POPOVICH, ELLIOTT and BROSKY, JJ.

BROSKY, J.

¶ 1 This is an appeal from the order entered October 6, 1999 in the Court of Common Pleas of Lackawanna County,

Family Division granting Appellee Alan Delsantro's Motion to Prevent Genetic Testing, and which further determined that Appellant, Paul J. Sekol, Sr. is the legal father of the minor child, Paul J. Sekol, Jr. For the reasons that follow, we vacate the order of October 6, 1999 and remand for further proceedings.

¶ 2 The salient background extracted from the scant certified record follows: [1]

¶ 3 Kelly Ann Sokol (mother) and Appellant, Paul Joseph Sekol, Sr., were married on May 9, 1994. N.T., 10/5/99, at 12. Paul Joseph Sokol, Jr., (minor child) was born on May 24, 1994. Complaint for Support, ¶ 4. Mother listed Appellant as the minor child's father on the birth certificate. N.T. at 4. Mother had been engaged to, and involved sexually with Appellee Delsantro prior to her marriage to Appellant. *Id.* at 10–11. During the marriage, mother never told Appellant that he was not or might not be the child's natural father. *Id.* at 11–13. Appellant never doubted whether he was the natural father of the minor child until he overheard mother talking on the telephone about her desire to have Delsantro become more involved with the minor child. *Id.* at 13–15. The parties separated, and thereafter Mother admitted to Appellant that he was not the minor child's natural father. *Id.* at 14–15. A divorce complaint was subsequently filed. *Id.* at 15. On July 9, 1999, Mother filed the instant support action against Appellee Delsantro, claiming that Delsantro was the father of the minor child. Complaint for Support, ¶ 4.

¶ 4 In response to the Complaint for Support, Delsantro denied paternity, and on August 3, 1999 presented a Motion to Prevent Genetic Testing. In his Motion, Delsantro alleged that because mother and Appellant were married at the time of the child's birth, Appellant was presumed to be the father, and further that because of the conduct of mother and Appellant, mother was estopped from seeking support from anyone other than Appellant. Motion to Prevent Genetic Testing, ¶¶ 9, 11. A rule to show cause was issued and a hearing scheduled. Mother filed an Answer to Delsantro's Motion, and averred that during the summer of 1998, Delsantro acknowledged that he was the biological father of the child and further that he regularly spent time with him and treated him as his own child. Answer to Motion to Prevent Genetic Testing, ¶ 4. Mother's Answer further denied Delsantro's allegation that Appellant acted as father for the entire five years of the minor child's life. *Id.* at ¶ 6. Appellant claimed that after confirming the child's true biological parentage he stopped holding the child out as his own and stopped supporting him financially. N.T. at 17–18.

¶ 5 In light of Delsantro's denial of paternity, mother, on August 19, 1999, presented a Petition to Show Cause why Appellant should not be made a party to the support action, alleging that in the event that the court denied genetic testing of Delsantro, that mother then intended to request an order of support from Appellant. Petition to Show Cause Why Paul Sekol Should Not Be Made A Party, ¶ 3. The matters were consolidated and a hearing was held on October 5, 1999 before the Honorable Chester Harhut, Jr. On October 6, 1999, Judge Harhut entered an order granting Delsantro's Motion to Prevent Genetic Testing and further de-

---

1. We note that contrary to Pa.R.A.P.1925(a) the trial court has not provided this Court with an opinion in support of its order. Consequently, we are uncertain as to the precise reasoning of the trial court for its disposition. However, our review is not hampered such that a remand for an opinion is necessary. Our review of the brief (the entire testimony of both mother and Appellant consisted of less than 9 pages) hearing transcript of October 5, 1999, reveals that the court was primarily concerned with Appellant's perceived burden to rebut the court's erroneous application of the presumption of paternity as a result of the child's birth during Appellant's marriage to mother. In light of our disposition, on remand, we direct the trial court to prepare detailed findings of fact and conclusions of law explaining its disposition.

termining Appellant to be the legal parent of the minor child, and that accordingly, Appellant shall be responsible for the minor child's support. Trial Court Order, 10/6/99. The order was docketed and notice forwarded on October 22, 1999. This timely appeal followed.

¶ 6 Appellant raises two issues in this appeal:

1. Whether the Trial Court erred as a matter of law or abused its discretion in determining that the presumption of paternity was applicable in the present matter and that Paul J. Sekol, Sr., was the legal father of the minor child, Paul J. Sekol, Jr., where the family was no longer intact?

2. Whether the Trial Court erred as a matter of law or abused its discretion in determining that Paul J. Sekol, Sr., was the legal father of the minor child, Paul J. Sekol, Jr., where there was insufficient evidence of records (sic) to support a finding that either Mrs. Sekol or Paul J. Sekol, Sr., were estopped from denying that Paul J. Sekol, Sr., was the legal and biological father of the minor child?

Appellant's Brief at 4.

¶ 7 We must once again revisit the application of the presumption that a child born to a married woman is the child of the woman's husband. We are guided by our Supreme Court who has had the opportunity to address the application of this presumption on a number of recent occasions.

■ ¶ 8 Historically, this presumption has been one of the strongest presumptions known to the law. *Strauser v. Stahr*, 556 Pa. 83, 726 A.2d 1052 (1999).

Traditionally, the presumption can be rebutted only by proof either that the husband was physically incapable of fathering a child or that he did not have access to his wife during the period of conception. Thus it has been held that, where the presumption applies, blood test results (existing or potential) are irrelevant unless and until the presumption has been overcome. It has also been held that, in one particular situation, no amount of evidence can overcome the presumption: where the family (mother, child, and husband/presumptive father) remains intact at the time that the husband's paternity is challenged, [by a third party] the presumption is irrebuttable.

*Id.* at 87–88, 726 A.2d at 1054 (citations omitted).

■ ¶ 9 "The policy underlying the presumption of paternity is the preservation of marriages. *The presumption only applies in cases where that policy would be advanced by the application; otherwise it does not apply.*" *Fish v. Behers*, 559 Pa. 523, 528, 741 A.2d 721, 723 (1999) (emphasis supplied) (quoting *Brinkley v. King*, 549 Pa. 241, 250–51, 701 A.2d 176, 181 (1997)).

■ ¶ 10 "The legal identification of a father, however, even in a case involving the presumption of paternity, may also involve the question of estoppel." *Brinkley*, 549 Pa. at 248, 701 A.2d at 179 (1997). "One or both of the parties may be prevented from making a claim based on biological paternity because they have held themselves out or acquiesced in the holding out of a particular person as the father." *Id.* at 248, 701 A.2d at 179–180.[2]

¶ 11 In *Brinkley*, hour Supreme Court set forth the analysis required to deter-

---

**2.** In *Freedman v. McCandless*, 539 Pa. 584, 654 A.2d 529 (1995) our Supreme Court stated:

Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. ... [T]he doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and

mine paternity of a child conceived or born during a marriage as follows:

> [T]he essential legal analysis in these cases is twofold: *first one considers whether the presumption applies to a particular case.* If it does, one then considers whether the presumption has been rebutted. Second, *if the presumption* has been rebutted or *is inapplicable, one questions whether estoppel applies.* Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. *If the presumption* has been rebutted or *does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered.* If the trier of fact finds that one or both of the parties are estopped, no blood tests will be ordered.

*Id.* at 250, 701 A.2d at 180 (emphasis supplied).

¶ 12 Thus we must first determine whether the presumption applies in this case. We hold that it does not. Here, the parties separated and a divorce action was pending prior to the hearing in the support matter instituted by mother against Appellee Delsantro.[3] Accordingly, the purpose underlying the presumption (preservation of the marriage) cannot be achieved in this case, and therefore the presumption does not apply. *Fish v. Behers,* 559 Pa. 523, 741 A.2d 721 (1999); *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997).

¶ 13 It is evident upon our review of the hearing transcript that the trial court in fact erroneously applied the presumption. Indeed, at the beginning of the proceeding, prior to the offering of any testimony, the court stated: "Now from all I know of this, the relevant issue of this, *you have a major presumption to overcome.* And I don't

think—I don't see how you can do it." N.T. at 2 (emphasis supplied). The court later reiterated, "But what is it, Dave, [Appellant's counsel] that you're going to show that would remove any presumption." *Id.* at 4. Appellant's counsel then attempted to argue to the court that the family "isn't intact anymore", *id.* at 5, however the court interjected the following:

> What about a kid that during [the] first years of the kid's life, you coddle that kid, you take care of the kid as if it's your own and then all of [a] sudden some place down the line you get mad at the mother of the kid and you say she's shafting me, the hell with this kid and you just throw him in the garbage.
>
> The law is written to prevent that from happening. That's the purpose of the law so this doesn't happen with kids. That's why the law is there. And it's a very simple law.
>
> You have a major—or you have to show that she defrauded him and that she lied to him, and that he didn't accept it from day one and that he said I'm not the father. I didn't do this. You have to show that he disputed this and he didn't. And the child has lived in that house at the least from the time of his infancy with him. And that's where it is.
>
> Unless you show me some major— that something major happened, there is no question in my mind. In fact he should be—as far as I'm concerned he's breaching moral and ethical obligations to this kid.
>
> So tell me what you're going to testify to so that I maybe—I'm not sure I see the need for any testimony.

*Id.* at 5–6.

¶ 14 Counsel for Appellant then attempted to abide by the court's directive, by

---

father, to their prior conduct regarding paternity of the child."
*Id.* at 591, 654 A.2d at 532–533 (citation omitted).

**3.** Due to the brevity of the record it is unclear exactly when the parties separated, when the divorce was filed, and when post-separation,

mother informed Appellant that he was not the minor child's biological father. However, it is undisputed that at the time of the hearing, mother and Appellant were separated and a divorce had been filed. Therefore, the family unit (mother, child and husband) was no longer intact.

presenting testimony pertaining to allegations of fraud. However, counsel's efforts were thwarted by the court sustaining objections on the basis of relevance, to questions asked of mother as to when the child was conceived, and whether mother was involved sexually with others at the time of conception. *Id.* at 9–10.[4]

■ ¶ 15 Although some limited testimony was introduced bearing on factors relevant to the issue of estoppel, the hearing was far from complete.[5] In fact the court sustained an objection to Appellant's testimony regarding his lack of a relationship with the child after he became aware of the child's alleged biological lineage. The following question was posed to Appellant on cross-examination:

Q: Up until the child was four years of age you held out to the world that you were the father of the child?

A: I believed with my heart and soul that this kid was mine. But actually as time went on with medical I found out the truth. And I had to pay out of my own pocket to find out the truth after hearing it from the mother.

And I understand that today he doesn't even know me as his father. He doesn't even know me as daddy.

*Id.* at 17–18. Although the court sustained an objection based on speculation, the response is consistent with Appellant's position that he ceased holding the child out as his own, once he became aware of the true circumstances of the child's conception. This is certainly a relevant consideration in determining whether estoppel should apply in this case.[6]

■■ ¶ 16 It is also important to note that since Appellant is seeking to inject elements of fraud and/or misrepresentation pertaining to alleged conduct of both mother and Appellee Delsantro, that this evidence must be considered by the trial court in whether to apply paternity by estoppel. *Kohler v. Bleem,* 439 Pa.Super. 385, 654 A.2d 569 (1995).

The presumption that a child born during a marriage is a child of the marriage and the doctrine of paternity by estoppel grew out of a concern for the protection of the family unit; where that unit no longer exists, it defies both logic and fairness to apply equitable principles to perpetuate a pretense. In this case, application of estoppel would punish the party that sought to do what was righteous and reward the party that has perpetrated a fraud.

*Id.* at 575–576. *See also, B.O. v. C.O.,* 404 Pa.Super. 127, 590 A.2d 313, 315 (1991) ("When an allegation of fraud is injected in a case, the whole tone and tenor of the

---

4. It is likewise evident from the court sustaining objections on the basis of relevance, that it was applying the presumption of paternity, as the answers to these questions would indeed be relevant to the issue of fraud.

5. In *Freedman v. McCandless,* 539 Pa. 584, 593, 654 A.2d 529, 533 (1995) our Supreme Court held that: "in any child support matter in which paternity is denied on the grounds of estoppel, the trial court must conduct a hearing on the issue of estoppel and determine whether the mother is estopped from pursuing her claim against the alleged father."

6. The Supreme Court has recognized:

[T]he doctrine of estoppel will not apply when evidence establishes that the father

failed to accept the child as his own by holding it out and/or supporting the child. Only when the doctrine of estoppel does not apply will the mother be permitted to proceed with a paternity claim against a putative father with the aid of a blood test. *Jones v. Trojak,* 535 Pa. 95, 105–106, 634 A.2d 201, 206 (1993) (citing *Christianson v. Ely,* 390 Pa.Super. 398, 568 A.2d 961 (1990)). *See also, Kohler v. Bleem,* 439 Pa.Super. 385, 654 A.2d 569 (1995) (a case involving fraud and misrepresentation, where this Court held that a former husband knowing he could not be the biological father, but who nonetheless accepted the child as his own, and who then after being apprised of the child's true biological paternity ceased his relationship with wife and the minor child, was not estopped from denying paternity).

matter changes. It opens the door to overturning settled issues and policies of the law.").[7]

¶ 17 Based upon our review of the certified record, we hold that there was insufficient evidence before the trial court to support a finding that estoppel by paternity applies to the facts of this case.

¶ 18 Thus on remand, the trial court shall conduct a full and complete evidentiary hearing giving due consideration to the claims of estoppel and the interplay of the alleged fraud/misrepresentation, and shall then determine whether under the facts of this case, any fraud/misrepresentation so found precludes the application of estoppel in the instant case. Should the court find that estoppel is not applicable under the facts of this case, either because fraud/misrepresentation precludes its application or because the evidence is insufficient, then it shall order all parties to submit to the appropriate genetic testing.

¶ 19 Order vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

7. The test for fraud is: (1) a misrepresentation, (2) a fraudulent utterance, (3) an intention by the maker that the recipient will thereby by induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result. *B.O. v. C.O.*, 404 Pa.Super. 127, 590 A.2d 313, 315 (1991). Fraud or intent to defraud must be proven by evidence that is clear, precise and convincing. *Id.* at 315.