404 Pa. Superior Ct. 127 (1991)
590 A.2d 313
B.O., Appellant,
v.
C.O., Appellee.
Superior Court of Pennsylvania.
Argued February 26, 1991.
Filed April 26, 1991.
*129 Gregory S. Fox, Public Defender, Ellwood City, for appellee.
Robert D. Clark, New Castle, for appellant.
Before DEL SOLE, FORD ELLIOTT and BROSKY, JJ.
DEL SOLE, Judge:
Brandon was born to B.O., who was unmarried, on January 10, 1989. Subsequently, Appellee here, C.O., signed an acknowledgment of paternity on January 25, 1989, admitting that he was the father of Brandon. He then entered into a support agreement before a domestic relations officer of the Lawrence County Court on June 30, 1989. This agreement subsequently served as the basis of a support order which was entered on July 5, 1989.
Next, on August 15, 1989, C.O. filed a dual pleading entitled Petition for Court Ordered Blood Tests and Petition for Appeal from Agreement for Support. He premised his request for relief upon a statement in the petition in which he relates that "he has cause to believe that he is not the father of Brandon." However, before the court ruled on this petition and pursuant to a voluntary agreement, B.O., Brandon, and C.O., submitted themselves to genetic testing. The paternity evaluation report concluded that C.O., was excluded as the biological father of Brandon because he lacked the genetic markers, Kidd a and HLA A30, B7 which are present in Brandon, but absent in the mother, B.O. C.O. was also excluded by the Rh and MNSs systems.
It should be noted that C.O. has not established a parental relationship with Brandon. He terminated his association with B.O. prior to Brandon's birth, and remained out of touch until he was contacted by Domestic Relations to discuss the paternity of the child. He filed his petition just seven months after the birth of the child, and during that time he had little or no contact with either B.O. or Brandon. B.O.'s letters to C.O. entered as exhibits at trial, attest to the fact that C.O. consistently refused to meet with her or *130 visit Brandon after the petition contesting paternity was filed.
C.O. is a man of limited intelligence and scanty education. He only finished the eighth grade in school, and his mother stated at trial that he is not fully able to read and understand items. He did not fill in the answers on the acknowledgment of paternity form himself, the domestic relations officer did it for him, and stated at trial that he could not remember what happened at the meeting at the domestic relations office when the form was signed. His mother has taken care of him for his twenty-six years, and both his mother and B.O. acknowledged at trial that he was easily influenced by others.
The trial court ruled that the support order should be set aside because the original acknowledgment of paternity and the resulting support order were the product of fraud. We affirm this result.
We have stated that an order for support of a child necessarily determines the issue of paternity. Absent an appeal taken directly from that order, or the showing of fraud, the aggrieved party is foreclosed from challenging this determination. Wachter v. Ascero, 379 Pa.Super. 618, 550 A.2d 1019 (1988). It is only when the overriding equities favor the putative father, that we may overturn a duty of support assumed by that parent. See, Commonwealth ex rel. Gonzalez v. Andreas, 245 Pa.Super. 307, 312, 369 A.2d 416 (1976).
It is the settled policy of the law, which looks to the well being of the child, that a parent may not challenge the paternity of a child once the father has acknowledged such paternity. This acknowledgment can be manifested by conduct of the putative father, in assuming the role of father in relationship to the child, Commonwealth ex rel. Coburn v. Coburn, 384 Pa.Super. 295, 558 A.2d 548 (1988), Seger v. Seger, 377 Pa.Super. 391, 547 A.2d 424 (1988), Wachter, supra, and by the formal recognition of his duty to support the child, often through compliance with a court *131 order, such as a support or custody order. Commonwealth ex rel. Palchinski v. Palchinski, 253 Pa.Super. 171, 384 A.2d 1285 (1978); R.J.K. v. B.L., 279 Pa.Super. 71, 420 A.2d 749 (1980); Schultz v. Connelly, 378 Pa.Super. 98, 548 A.2d 294 (1988); Gonzalez, supra. This holds true whether the child was born in or out of wedlock, although in the case of marriage the evidence must also overcome the presumption of legitimacy arising in favor of children born to married women, which is a particularly strong and well-established policy of this Commonwealth. Manfredi Estate, 399 Pa. 285, 289, 159 A.2d 697, 699 (1960), Connell v. Connell, 329 Pa.Super. 1, 6, 477 A.2d 872, 875 (1984); Burston v. Dodson, 257 Pa.Super. 1, 13, 390 A.2d 216, 222 (1978); Commonwealth v. Fletcher, 202 Pa.Super. 65, 195 A.2d 177 (1963).
When an allegation of fraud is injected in a case, the whole tone and tenor of the matter changes. It opens the door to overturning settled issues and policies of the law. See, New York State Electric and Gas v. Westinghouse, 387 Pa.Super. 537, 553, 564 A.2d 919 (1989). Consequently, we must be careful to narrow that opening, carefully scrutinize such claims, and avoid generalized and unsupported allegations. Fraud or intent to defraud must be proved by evidence that is clear, precise and convincing. Snell v. Pennsylvania, 490 Pa. 277, 281, 416 A.2d 468, 470 (1980); Id. We require that fraud be averred with particularity, Pa.R.C.P. 1019(b), recognizing that fraud is a claim that is easily made. Id. This is especially true in cases of this nature, where, as a rule, a father who finds he is not the biological parent of a child he has claimed as his issue will feel he has been manipulated and deceived.
Having said that fraud must be a narrow exception to the settled law of this Commonwealth which supports the finality of an acknowledgment of paternity, we find, in the special circumstances present here, the acknowledgment of paternity by C.O. was a result of fraud as defined in the case law of this Commonwealth.
*132 In the case, Delahanty v. First Pennsylvania Bank, N.A., 318 Pa.Super. 90, 108, 464 A.2d 1243 (1983), quoting Scaife Co. v. Rockwell-Standard Corp., 446 Pa. 280, 285, 285 A.2d 451, 454 (1971), the court held that the elements of fraud are: (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.[1] An examination of the elements as they relate to the case sub judice will demonstrate that the support order should be set aside.
The testimony reveals that B.O. falsely represented to C.O. that he was the father of Brandon, and that she had not "slept with anyone else within the last five years." She repeated this last statement not only in two letters sent to C.O., but at trial, despite the fact that the test results completely excluded C.O. as the father. Therefore, there was a misrepresentation, and the first element is satisfied.
Next we must consider whether B.O. made these representations with the requisite intent or scienter, thus constituting a fraudulent utterance. Our Supreme Court has stated in this regard that, "it is well settled that fraud is proved when it shown that the false representation was made knowingly, or in conscious ignorance of the truth, or *133 recklessly without caring whether it be true or false." Warren Balderston Co. v. Integrity Trust Co., 314 Pa. 58, 170 A. 282 (1934), quoted in, Delahanty, supra, 318 Pa.Super. at 108, 464 A.2d 1243.
We can not say that B.O.'s representation that C.O. was Brandon's father, was made knowingly or in conscious ignorance of the truth. Prior to Brandon's conception, B.O. was engaging in sexual relations with C.O., and thus we cannot conclude that she knew he was not the father at the time she made the representations concerning his paternity. However, as much can not be said of her second statement. Short of her having an inability to recall having had sexual intercourse with a man during the period of conception, of which there is no evidence or allegation, she must have known that her representation that she had been faithful to C.O. for five years prior to conception was false. Thus we find that B.O. uttered a fraudulent statement when she claimed such faithfulness, thus satisfying the second element of this analysis.
Next, we find that Appellant intended that this misrepresentation would cause C.O. to acknowledge paternity, thereby inducing him to stay with her and live as a family. The letters and trial testimony clearly show that Appellant wanted C.O. to marry her and live with her, and she wanted him very much to acknowledge and support her baby. There can be no question that the misrepresentations were made as an inducement for him to acknowledge Brandon as his son, and assume his financial obligation to support him.
Next we must determine if C.O. justifiably relied on Appellant's misrepresentations. Relative to this issue the Pennsylvania Supreme Court has held that the character, intelligence, experience, age and mental and physical condition of the parties must be considered. Emery v. Third National Bank of Pittsburgh, 314 Pa. 544, 547, 171 A. 881 (1934). Cf., Beeman v. Calvert Fire Insurance Co., 173 Pa.Super. 20, 94 A.2d 90 (1953), (a release was declared fraudulent in the context of the Appellant's physical and mental condition, where the adjuster approached the victim *134 of the accident to sign a release just three days after he had been released from the hospital and while he was still incapacitated); In Accord, Siskin v. Cohen, 363 Pa. 580, 584, 70 A.2d 293 (1950), (recission of a contract for purchase of a bar was granted on the basis of fraud; purchaser was unfamiliar with the business and was working under the "handicap of inexperience.")
In this case, the record shows that C.O. was a man of limited intelligence and limited experience in the world. He always lived with his mother who took care of him, and had never before had a serious girlfriend. He was also known to be subject to the influence of others, and overly trusting. It would not be reasonable to expect C.O. to question Appellant's representations concerning his paternity. When the means of obtaining information is not equal between the parties involved, either through lack of access to such information or because of the physical or mental incapacity of the party relying on the misrepresentations, such investigation is not required. Siskin v. Cohen, supra., 70 A.2d at 295. Here, Appellant's access to the information concerning whom she was having sexual relations with and whether she was faithful to C.O. was far greater than C.O.'s. Furthermore, C.O.'s emotional and mental capacity to assess Appellant's representations was limited. Thus, we hold that his reliance on Appellant's misrepresentations when he acknowledged paternity was reasonable. (Cf., Gonzalez v. Andreas, supra., 245 Pa.Super. at 313, 369 A.2d 416, where Appellant, of normal intelligence and experience, knew that his wife had previously borne two illegitimate children. He, therefore, did not reasonably rely on her representations when he had both sufficient capacity and reason to question the paternity of the child before he decided to acknowledge paternity.)
Finally, we find that C.O. suffered damages as a proximate result of his reliance on Appellant's misrepresentations. The damages are evident, as he committed himself to provide support payments for a period that could exceed eighteen years, even though he is not the father. Therefore, *135 we find that C.O.'s acknowledgment of paternity was a result of fraud.
Apart from the inequity of fraudulent misrepresentation, the equitable considerations in this case overwhelmingly favor the father. In the cases in which this court has refused to reopen the question of paternity, even when such biological paternity was ruled out, the child was already several years old and the putative father was known to the child as a parent. Wachter, supra.; Coburn, supra.; Gonzalez, supra. We have said that parental relationships can be established constructively, and that such relationships and the duties associated with these relationships merit judicial recognition and enforcement, even if there is no biological relationship. Wachter, supra, 379 Pa.Super. at 622, 550 A.2d 1019. Further, Judge Spaeth has stated in his concurrence to Gonzalez, supra, 245 Pa.Super. at 320, 369 A.2d 416, "that a supposed parent should not indefinitely be permitted to upset a child's settled sense of family." But here the child has had no settled sense of family. Paternity proceedings were started when the child was seven months old. Brandon has never known C.O. as his father, as he has never been present in the mother's home where any such relationship might have been established.
Given that there will be no disruption of the child's sense of family, as none was ever established, and given that we have found that Appellant's acknowledgment of paternity was induced by fraudulent misrepresentations, we affirm the order of the trial court vacating the order for support entered against C.O. Jurisdiction relinquished.
NOTES
[1] Although, this analysis has been used frequently in cases in which fraud is alleged, see, Westinghouse, supra., 387 Pa.Super. at 554, 564 A.2d 919; Silverman v. Bell Savings and Loan Association, 367 Pa.Super. 464, 470, 533 A.2d 110 (1987); Woodward v. Dietrich, 378 Pa.Super. 111, 124, 548 A.2d 301 (1988), the second element of this test, "a fraudulent utterance thereof," presents certain problems. It uses the word fraudulent as part of its definition of fraud. This circular reasoning is equivalent to providing a definition for defamation as a statement which is defamatory.

However, we will treat this second element of the Delahanty analysis as referring to the intent or scienter required for an utterance to be considered fraudulent. This intent has been characterized as knowing or reckless, and applies when the maker of the utterance knows or believes that the matter is not as he or she represents it to be, does not have the confidence in the accuracy of the representation that is stated or implied, or knows that there is not the basis for the representation that is stated or implied. Restatement of Torts 2d, Section 526; Woodward, supra., 378 Pa.Super. at 126, n. 5, 548 A.2d 301.