the reference to Appellant's right not to testify was more overt in this case than the reference in *Mitchell*, which could have been interpreted to reference pre-arrest silence, the uncontradicted evidence in this case is more substantial. Accordingly, following, as I must, the precedent established in *Mitchell*, I somewhat hesitatingly join the denial of relief in this case based upon my conclusion that the uncontradicted evidence of guilt was sufficiently overwhelming that the prejudicial effect of the prosecutor's comments did not contribute to the verdict.

In all other respects, I join the decision of the Majority.

**R.W.E., Appellant**

**v.**

**A.B.K. and M.K., Appellees.**

Superior Court of Pennsylvania.

Argued May 15, 2008.
Filed Oct. 24, 2008.

Diane R. Thompson, Philadelphia, for appellant.

Angeles Roca, Philadelphia, for A.B.K., appellee.

James A. Rocco and Susanne M. Wherry, Philadelphia, for M.K., appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, LALLY–GREEN, BENDER, BOWES, PANELLA, DONOHUE, SHOGAN and ALLEN, JJ.

OPINION BY DONOHUE, J.:

¶ 1 R.W.E. ("Robert") appeals from the order entered on December 5, 2006 in the Philadelphia County Court of Common Pleas. That order vacated an acknowledgment of paternity executed by Robert and A.B.K. ("Mother") based upon a finding of fraud, and adjudicated M.K. ("Father") the biological father of J.R.K. ("Child"). Robert raises six issues on appeal. Upon careful review, we affirm.

¶ 2 The facts and procedural history relevant to this appeal are as follows. Mother and Robert were involved in an on-again, off-again relationship between approximately February 2002 and November 2003, during which they periodically resided together.[1] In November 2003, Mother and Robert separated for several months

---

1. Mother and Robert were never married.

before reconciling in mid-February 2004, at which time Robert moved back in with Mother. During this separation between November 2003 and February 2004, Mother became sexually involved with another man, later identified as Father.

¶ 3 In mid-March 2004, Mother told Robert that she was pregnant. She also informed him that she had been sexually intimate with another man and that there was a possibility that this other man was the father of her unborn child. Because of the time frame of her relationships with Father and Robert, Mother believed there was a "50–50" chance that either man could be the father of her child. Mother and Robert agreed to proceed with the pregnancy, that Robert would parent the child, and that neither of them would undergo genetic testing to establish paternity. Mother and Robert resided together during the pregnancy, and Robert was present at the birth of Child on November 12, 2004. Father, who was deployed to Kuwait by the National Guard shortly after his relationship with Mother ended, was not informed of Mother's pregnancy or of Child's birth.

¶ 4 Days after Child's birth, Mother and Robert signed an acknowledgment of paternity form at the hospital provided by the Pennsylvania Department of Public Welfare pursuant to 23 Pa.C.S.A. § 5103. Robert was also identified as Child's father on Child's birth certificate. Mother and Robert continued to live together until sometime in 2005, when Robert moved out of the home occupied by Mother and Child.[2] Robert alleged that Mother initially allowed him to see Child after their

separation but then abruptly terminated his visits.

¶ 5 A custody battle over Child commenced. Robert filed a custody complaint and a petition for emergency relief on December 8, 2005. The trial court held a hearing on Robert's emergency petition, at which the issue of paternity was raised and genetic testing was ordered.[3] The results of genetic testing revealed a zero percent probability that Robert was the biological father of Child. In January 2006, Father was advised for the first time that he might be the biological father of Child. N.T., 8/28/06, at 14.

¶ 6 Based on the results of genetic testing, on January 30, 2006 and February 13, 2006, respectively, Mother and Robert filed cross motions for expedited relief regarding paternity and custody issues. At the hearing on these cross motions on February 22, 2006, Mother identified Father as the biological father of Child, and the trial court granted the oral motion of Mother's counsel to join Father as an additional defendant. The trial court resolved the cross motions by ordering additional genetic testing on Father, Mother and Child, and directed Mother and Robert to submit to drug tests and mental health assessments. The genetic testing confirmed the prior results, namely a 99.99 percent probability that Father was the biological father of Child.

¶ 7 Mother, Father and Robert subsequently filed a series of motions and cross-motions regarding both the acknowledgment of paternity form signed by Mother and Robert and Robert's custodial rights. On August 28, 2006, the trial court held an

---

2. The record reflects a discrepancy in the date of Robert's departure, with Mother claiming that Robert moved out between August and October of 2005, and Robert claiming that he did not move out until November 2005. *See* N.T., 8/28/06, at 7, 20–21, 29, 31.

3. The trial court also entered an interim order awarding Mother primary physical and legal custody of Child, and Robert, partial custody every Sunday from 9:00 a.m. to 8:00 p.m.

evidentiary hearing on the narrow issue of whether the court should grant Father's petition to set aside the acknowledgment of paternity executed at the time of Child's birth. On December 5, 2006, the trial court issued an opinion and order (1) rescinding the acknowledgment of paternity executed by Robert and Mother due to fraud, (2) adjudicating Father the biological father of Child, and (3) scheduling a hearing to determine whether Robert had standing to pursue custody and visitation rights to Child under an *in loco parentis* theory.

¶ 8 Robert appealed.[4] In an opinion dated September 20, 2007, this Court reversed, finding that the trial court had erred in finding that Robert and Mother committed fraud when executing the acknowledgement of paternity. On October 2, 2007, Father filed an application for reargument *en banc*. On November 27, 2007, this Court granted Father's application for reargument and withdrew the opinion of the original panel. In accordance with Pa.R.A.P. 2140, Father filed a substituted brief with this Court responding to Robert's original three issues on appeal and raising two new issues. Thereafter, Robert re-filed his original brief and also filed a supplemental brief responding to Father's substituted brief and raising one new issue. Mother did not file a brief.

¶ 9 In his original and supplemental briefs, Robert raises the following four issues for this Court's consideration:

- Whether the trial court erred in failing to confirm paternity based on constructive paternity by statute;
- Whether the trial court erred in rescinding the acknowledgment of paternity based on fraud where there was no evidence of fraud in the record;
- Whether the trial court erred in failing to confirm paternity by estoppel; and
- Whether Mother and Father are estopped from challenging Robert's paternity as a result of the trial court's entry of a support order against Robert.

¶ 10 In his supplemental brief, Father raises the following two issues for our consideration:

- Whether the acknowledgement of paternity should have been rescinded based upon mistake of fact; and must fail based on the waiver doctrine and the total absence of substantive support for the claim.
- Whether the trial court's order should be affirmed on the basis of public policy and the best interest of the child analysis.

We address all six issues in turn.

¶ 11 Initially, we note that we review the trial court's order for an abuse of discretion or error of law. Abuse of discretion exists where the trial court overrides or misapplies the law, or if there is insufficient evidence to sustain its order. *Vargo v. Schwartz*, 940 A.2d 459, 462

---

4. Under Pa.R.C.P.1910.15(f), an order establishing paternity without an order to pay support is normally interlocutory and non-appealable. *See Jackson v. Moultrie*, 288 Pa.Super. 252, 431 A.2d 1033, 1034 (1981). "In ascertaining what is a final appealable order, however, we must look beyond the technical effect of the adjudication to its practical ramifications." *Id.* at 1034–35. "A final order is generally one which terminates the litigation, disposes of the entire case, or effectively puts the litigant out of court." *Id.* at 1035. Since the trial court's order adjudicating Father the father of Child effectively terminated the litigation as it concerned Robert, we conclude that in this case it served as a final order from which Robert properly took an appeal.

(Pa.Super.2007). We will not disturb the trial court's findings if they are supported by competent evidence, and may not reverse simply because we might have made a different finding. *Id.*

¶ 12 We first address Robert's argument that the trial court erred in failing to find that paternity was conclusively established pursuant to 23 Pa.C.S.A. § 5103 by the acknowledgment of paternity he and Mother signed. Specifically, Robert argues that section 5103 does not provide a third party with standing to challenge an acknowledgment of paternity, and that the statute specifically limits those who can challenge the acknowledgment to signatories to the acknowledgment. The issue presented is a question of statutory interpretation, and as such, our review is plenary. *See Peters v. Costello*, 586 Pa. 102, 110, 891 A.2d 705, 710 (2005). We conclude that Robert's interpretation conflicts with the plain language of section 5103.

¶ 13 A court must construe the words of a statute according to their plain meaning. *See* 1 Pa.C.S.A. § 1903(a); *see also Colville v. Allegheny Co.*, 592 Pa. 433, 926 A.2d 424 (2007) (stating that when the words of a statute are clear, there is no need to look beyond the plain meaning of a statute). Section 5103 provides that the "signatories" of an acknowledgment of paternity may rescind such acknowledgment within sixty days. *See* 23 Pa.C.S.A. § 5103(g)(1). In the provision permitting challenges to acknowledgment based on fraud, duress, or material mistake of fact, however, our Legislature opted for different language. 23 Pa.C.S.A. § 5103(g)(2) provides:

> After the expiration of the 60 days, an acknowledgment of paternity may be challenged in court only on the basis of fraud, duress or material mistake of fact, which must be established by the *challenger* through clear and convincing evidence. An order for support shall not be suspended during the period of challenge except for good cause shown.

23 Pa.C.S.A. § 5103(g)(2) (emphasis added).

¶ 14 There is nothing in section 5103(g)(2) that limits the identity of potential challengers to signatories to the acknowledgment of paternity. If our Legislature had intended such an application, we conclude they would have used the term "signatories" in section 5103(g)(2) to express that limitation. By choosing the broader term "challenger," the Legislature intended to grant non-signatories the power to challenge the acknowledgment under the limited circumstances delineated in subsection (g)(2). Therefore, applying the plain reading of the statute to this case, Mother and Robert (as signatories) could have rescinded the acknowledgment of paternity within sixty days. After sixty days, they, or Father, as a challenger, could assert a challenge under subsection (g)(2) based upon fraud, duress, or material mistake of fact. Accordingly, we find no error in the trial court's finding that Robert's paternity was subject to challenge by Father under the fraud exception in subsection (g)(2).[5]

---

5. Robert also argues that Father lacks standing to challenge the acknowledgment of paternity signed in this case, relying on *Moyer v. Gresh*, 904 A.2d 958 (Pa.Super.2006). In *Moyer*, a custody dispute, the trial court applied the doctrine of paternity by estoppel and dismissed a biological father from the action, finding that he had voluntarily waived standing by playing a limited role in his son's life.

This is the result sought by Robert in this case, who suggests that the facts of *Moyer* are illustrative because the non-biological fathers in each case held themselves out as the child's father.

An important distinction between *Moyer* and this case, however, is that in *Moyer*, the biological father was made aware that he was the father at the time of the child's birth and

¶ 15 Next, Robert argues that the trial court improperly rescinded the acknowledgment of paternity he signed at Child's birth when no evidence of fraud existed. Pennsylvania law provides that a man may acknowledge the paternity of a child born out of wedlock by signing a voluntary acknowledgment of paternity form. The governing statute, 23 Pa.C.S.A. § 5103, states that:

> (a) **Acknowledgment of paternity.**— The father of a child born to an unmarried woman may file with the Department of Public Welfare, on forms prescribed by the department, an acknowledgment of paternity of the child which shall include consent of the mother of the child, supported by her witnessed statement [ ... ] In such case, the father shall have all the rights and duties as to the child which he would have had if he had been married to the mother at the time of the birth of the child, and the child shall have all the rights and duties as to the father which the child would have had if the father had been married to the mother at the time of birth.

23 Pa.C.S.A. § 5103(a). As noted, a signed, witnessed, voluntary acknowledgment of paternity shall be considered a legal finding of paternity if it is not rescinded by the signatories within sixty days of its signing. 23 Pa.C.S. § 5103(g)(1). After sixty days, the acknowledgement may only be challenged in court on the basis of fraud, duress or material mistake of fact, if established by the challenger through clear and convincing evidence. 23 Pa.C.S.A. § 5103(g)(2).

¶ 16 In *B.O. v. C.O.*, 404 Pa.Super. 127, 590 A.2d 313 (1991), this Court stated that "when an allegation of fraud is injected in [an acknowledgment of paternity] case, the whole tone and tenor of the matter changes. It opens the door to overturning settled issues and policies of the law." *B.O.*, 590 A.2d at 315. This Court went on to create a narrow fraud exception for challenging paternity, which is otherwise a settled issue based on the signed acknowledgment. We adopted the traditional elements of fraud established in Pennsylvania jurisprudence:

> (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.

*Id.*

¶ 17 Recent cases have moved away from this rigid five-prong test which this Court acknowledged in *B.O.* as problematic and somewhat circular. *B.O.*, 590 A.2d at 315. Our recent decision of *Glover v. Severino*, 946 A.2d 710 (Pa.Super.2008), provides additional guidance as to the elements of fraud in the context of challenges to acknowledgments of paternity:

> A misrepresentation need not be an actual statement; it can be manifest in the form of silence or failure to disclose relevant information when good faith requires disclosure. Fraud is practiced

thereafter *voluntarily* allowed another man to hold himself out as the father of the child for nine years. Under those circumstances, the trial court prevented the biological father from challenging the non-biological father's paternity. In contrast, in this case Father was unaware that Child even existed. Upon learning of Child and the possibility of his

paternity, Father immediately sought to establish himself as the father and become involved in Child's life. At no point after learning he was the biological father did Father voluntarily allow Robert to act as Child's father. Accordingly, we find the facts of *Moyer* inapposite to this case.

when deception of another to his damage is brought about by a misrepresentation of fact **or by silence when good faith required expression.** Fraud comprises anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture.

*Id.* (quotations and citations omitted) (emphasis in original).

¶ 18 In *Glover,* a mother had a brief sexual relationship with a putative father and became pregnant. Despite knowing that she had other sexual partners at the time of conception, the putative father signed an acknowledgment of paternity and paid child support, though his involvement in the child's life was minimal and sporadic. Mother insisted that putative father was the father of the child, despite the results of later testing that revealed he was not. This Court held that despite the mother's strong belief as to the identity of the biological father, her silence on the issue of other possible fathers and her failure to be forthcoming about the true probabilities of paternity constituted fraud by omission.

¶ 19 Though the facts of this case are different from those in *Glover*—most notably, because the defrauded party is the biological father and not Robert, the putative father—the guiding principles regarding fraud are the same. In its written opinion, the trial court found that Father had established fraud on the part of Mother and Robert by clear and convincing evidence:

Prior to the birth of this child, at the time Mother advised [Robert] of her pregnancy, she also advised [Robert] that she had been sexually active with another man and that individual may be the father of the child. [Robert] testified that at that time Mother and he made an agreement that [Robert] would raise the child as his son and at no time would either party challenge or question the paternity of this child. [Robert] specifically testified that Mother and he agreed to forgo any paternity testing. This court finds that this agreement was an intentional act on the part of Mother and [Robert] to defraud [Father] and deny him his right as the biological father of the child at issue.

Trial Court Opinion, 12/5/06, at 3.

¶ 20 Reviewing the record, we conclude that it supports the trial court's findings. At the hearing held prior to the entry of the trial court's order, Robert testified that after finding out that Mother was pregnant in mid-March 2004, Robert was informed by Mother of the possibility that the baby might not be his. N.T., 8/28/06, at 19. Prior to such testimony, Robert's counsel stipulated that Robert would testify that he and Mother had been separated between November 2003 and mid-February 2004, and that during this time, they had no contact, sexual or otherwise.[6] *Id.* at 17–18. Robert testified that Mother informed him that she had been sexually involved with another man during this separation. *Id.* at 19, 23. Despite this fact, Robert and Mother agreed to have Robert play the role of Child's father and not to seek DNA testing. *Id.* at 20.

¶ 21 Mother also testified at the hearing, stating that she informed Robert that there was a possibility that he was not the biological father, and that there was "one other person" who it might be. *Id.* at 26.

---

**6.** Child was born on November 12, 2004, nine months after Robert's and Mother's reconciliation.

Mother confirmed that she and Robert had agreed that he was going to fulfill the role of father of the unborn child and that they would never seek DNA testing. *Id.* at 27–28. Implicit in this arrangement was an agreement that the "one other person" who might be the father would be kept in the dark about Mother's pregnancy and his probable paternity of Child.

¶ 22 The principle of fraud by omission has been established by this Court as a proper basis for overturning otherwise valid acknowledgments of paternity, and we believe that this principle is applicable in this case. Here, the record demonstrates that Robert knew there was a possibility that another man was the biological father of Child. Notwithstanding these facts, Robert and Mother entered into an agreement essentially to "choose" Robert as the father of Mother's unborn child and to forgo genetic testing to conclusively establish paternity. The record also indicates that although Mother knew the other man's identity (i.e. Father), she did not immediately inform Father of her pregnancy or that he was possibly the biological father of her child. Instead, she waited until after Child's birth (and after Robert had already acknowledged paternity) to tell Father that Child might be his biological son, thus precluding Father from asserting his paternity rights in a timely fashion.

¶ 23 Our case law most often addresses fraud as it relates to the issue of paternity involving a father fraudulently induced into accepting paternity and its resulting obligations. *See, e.g., N.C. v. M.H.,* 923 A.2d 499 (Pa.Super.2007); *Gebler v. Gatti,* 895 A.2d 1 (Pa.Super.2006); *B.O. v. C.O.,* 404 Pa.Super. 127, 590 A.2d 313 (1991). We find the exception particularly applicable to this agreement intended to defraud a biological father of his paternity rights. As such, we hold that the record supports a finding of fraud and the trial court did not err in rescinding Robert's acknowledgment of paternity on that basis.

¶ 24 For his third issue, Robert argues that the trial court erred in failing to find that paternity by estoppel, otherwise known as equitable estoppel, was applicable. Paternity by estoppel has been defined as:

> [T]he legal determination that because of a person's conduct (e.g. holding out the child as his own, or supporting the child) that person, regardless of his true biological status, *will not be permitted to deny parentage,* nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at 'achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding paternity of the child.'

*Wieland v. Wieland,* 948 A.2d 863, 869 (Pa.Super.2008) (emphasis added) (*quoting Warfield v. Warfield,* 815 A.2d 1073, 1076 (Pa.Super.2003)).

¶ 25 The doctrine of paternity by estoppel has been applied by courts to prevent putative fathers who hold themselves out as the fathers of their children from subsequently *denying* their parentage. *See Conroy v. Rosenwald,* 940 A.2d 409 (Pa.Super.2007); *Weidman v. Weidman,* 808 A.2d 576 (Pa.Super.2002). Our appellate courts have not expanded this doctrine to allow putative fathers to use the doctrine offensively, in order to *assert* their paternity rights by and through their prior conduct. We decline to do so here, particularly at the expense of a biological father who did not earlier claim paternity only because of Mother's and Robert's decision to deprive him of the opportunity to

do so. *See Vargo*, 940 A.2d at 464 ("Evidence of fraud or misrepresentation with regard to issues of paternity is relevant to the application of estoppel and must be considered by the trial court"). Accordingly, we find Robert's paternity by estoppel claim meritless.

¶ 26 For his fourth and final issue, Robert argues that the trial court's December 5, 2007 interim support order conclusively determined the issue of paternity, and that Mother and Father are thus estopped from challenging Robert's paternity of Child. Robert's claim in this regard encompasses two theories: first, the trial court's interim support order against Robert is collateral estoppel on the issue of Child's paternity, and second, because Mother asserted Robert's paternity of Child in the support petition, Mother is estopped from denying his paternity by the doctrine of judicial admissions.

¶ 27 Collateral estoppel bars a challenge to paternity once an order of support is entered, absent a showing of fraud or unless a direct appeal is taken from the support order. *See Wachter v. Ascero*, 379 Pa.Super. 618, 550 A.2d 1019 (1988). We reject Robert's collateral estoppel argument in this case, however, because the trial court's December 5, 2007 support order is a nullity.

¶ 28 Pursuant to Rules 1701(a) and 2591(a) of the Rules of Appellate Procedure, a trial court has no jurisdiction to proceed in a matter[7] from the time an appeal is taken until this Court remands the record back to the trial court. Pa. R.A.P. 1701(b), 2591(a). Pa.R.A.P. 2572(a)(2) provides that the pendency of an application for reargument stays the remand of the record back to the trial court until disposition of said application, and until thirty days after entry of a final order disposing of the appeal.

¶ 29 On October 2, 2007, Father filed an application for reargument *en banc* of the original panel's September 20, 2007 opinion ruling in Robert's favor; and on November 27, 2007, we granted Father's application for reargument. In accordance with the Court's practice in such circumstances, we withdrew the original panel's previously filed opinion and restored the case to the calendar for reargument. Pa. R.A.P. 2546(b). As a result, on the date the trial court entered its interim support order (December 5, 2007), jurisdiction in this case remained with this Court. The trial court thus lacked jurisdiction to enter an interim support order on December 5, 2007. Because the trial court lacked jurisdiction to enter the aforementioned support order, the order cannot form the basis

7. Pa.R.A.P. 1701(c) generally defines the limitations on a trial court's jurisdiction once an appeal has been taken:

Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, [ ... ] the appeal [ ... ] shall operate to prevent the trial court [ ... ] from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court [ ... ] or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant. *Id.*

This Court has tested the trial court's post-appeal jurisdiction by determining whether the orders on appeal were relevant to or at issue in the proceedings continuing in the trial court. If so, the trial court lacks jurisdiction to proceed on the matter during the pendency of the appeal. *See Rosen v. Rosen*, 520 Pa. 19, 549 A.2d 561 (1988); *In re Griffin*, 456 Pa.Super. 440, 690 A.2d 1192 (1997).

As evidenced by Robert's collateral estoppel argument, the trial court's order rescinding Robert's acknowledgment of paternity and adjudicating Father the father of Child was *directly relevant* to the support action and order of support subsequently entered in the case. Thus, it is our conclusion that the trial court was divested of jurisdiction to proceed on the support order.

for collateral estoppel as to the issue of Child's paternity.

¶ 30 Robert's reliance on estoppel based on the doctrine of judicial admissions is likewise misplaced. The doctrine of estoppel based on judicial admissions is based on the premise that when a party asserts a *factual* allegation in a pleading to support a claim, he or she may not later deny the fact. *See In re Adoption of S.A.J.*, 575 Pa. 624, 632, 838 A.2d 616, 621 (2003). Robert claims that by demanding support from him as Child's father in a judicial pleading, Mother is estopped from now asserting that he is not the father of Child.[8] On September 20, 2007, the original panel of this Court reversed the trial court's order, resulting in a finding that Father could not set aside Robert's acknowledgment of paternity. On October 31, 2007, Mother filed a complaint for child support against Robert *based on such finding by the original panel.* Mother's assertions of Robert's paternity of Child in her child support complaint were allegations dictated by the panel decision of this Court (which she incorrectly believed to be a final order disposing of the issue of Child's paternity). Because this Court withdrew the panel decision when it granted Father's reargument petition, however, and because (as determined hereinabove) the trial court's December 5, 2007 support order was a nullity, the doc-

trine of estoppel by judicial admissions has no applicability here.

¶ 31 We turn next to the two claims raised by Father in his substituted brief. Before doing so, however, we must first decide whether a party who has been granted reargument may raise new issues in a supplemental or substituted brief that were not raised before, or decided by, the original panel. Pa.R.A.P. 2140 provides that the party that petitioned for reargument must file its initial brief[9] first, within 21 days of the date of the order granting reargument. Neither Rule 2140 nor prior appellate court decisions[10] provides any guidance, however, regarding the proper scope of a new brief (i.e., supplemental or substituted). In the absence of any express limitations, we therefore conclude that on reargument a petitioner may raise any issue on reargument that could have been raised before the original panel.

¶ 32 Father's first new issue, that mutual mistake of fact was an alternate ground for rescinding the acknowledgment of paternity form in this case, could not have been raised before the original panel because it was not properly preserved for appeal in the trial court below. Pa.R.A.P. 302(a) provides that issues "not raised in the lower court are waived and cannot be raised for the first time on appeal." In his substituted brief, Father does not identify where in the trial court below he raised or preserved this issue, as required by Pa.

---

8. Even if we found merit in this argument, in his supplemental brief Robert does not attempt to explain how *Father* would be estopped from denying Robert's paternity.

9. Pursuant to Pa.R.A.P. 2140(a), the brief may either be the brief filed before the original panel (together with a supplemental brief if desired), or a substituted brief.

10. Prior appellate court decisions indicate that scope limitations on the issues to be considered are recognized when included ei-

ther in a Supreme Court remand order or in this Court's order granting reargument. *See, e.g., Graziani v. Randolph*, 887 A.2d 1244, 1248 (Pa.Super.2005) (Superior Court will only consider the single issue specified in the Supreme Court's remand order), *appeal denied*, 583 Pa. 663, 875 A.2d 1075 (2005); *ABG Promotions v. Parkway Publishing, Inc.*, 834 A.2d 613, 615 n. 2 (Pa.Super.2003) (Superior Court considered only those issues designated by the Court in the order granting *en banc* review). *See also* Pa.R.A.P. 2546(b).

R.A.P. 2117(c). Moreover, in our independent review of the record, we could not identify any location in the record where Father raised the issue of mutual mistake of fact for the trial court's consideration. As a result, we find that Father waived the issue of mutual mistake of fact for purposes of this appeal. *See Tyus v. Resta*, 328 Pa.Super. 11, 476 A.2d 427 (1984) (appellate issue waived where neither appellate court's review of record nor appellant's brief indicated that issue was raised below).

¶ 33 Father's second new issue, that the trial court's order should be upheld on the basis of public policy and a "best interests of the child" analysis, was properly preserved for appeal.[11] We conclude, however, that this issue is not appropriately resolved as part of our review of the narrow issue of paternity on appeal.

 ¶ 34 A "best interests" analysis is applicable to, and the paramount concern in, any child custody case. *See, e.g., Hogrelius v. Martin*, 950 A.2d 345, 348 (Pa.Super.2008); *N.H.M. v. P.O.T.*, 947 A.2d 1268, 1273 (Pa.Super.2008); *A.J.B. v. M.P.B.*, 945 A.2d 744, 747 (Pa.Super.2008). Accordingly, we decline to address the issue of whether Child's best interests would be served by having Robert play a continuing role in his life, which would be better addressed as part of the subsequent custody phase of this case, if there is one. In its written opinion, the trial court stated that it was "deciding paternity only," and "not whether [Robert] has established *in loco parentis* for purposes of standing to request custodial rights." Trial Court Opinion, 12/5/06, at 4. As Robert's third-party custody rights are not presently at issue in this appeal, the issue of Child's "best interests" is outside of our jurisdiction and we decline to address it.

¶ 35 For all of the foregoing reasons, we find that the trial court's decision to rescind Robert's acknowledgment of paternity and adjudicate Father as the biological father of Child was not an abuse of discretion. Accordingly, we affirm its December 5, 2006 order.

¶ 36 Order affirmed.

---

**11.** Father raised this issue in his post-hearing memorandum of law submitted to the trial court dated September 14, 2006. *See* Memorandum of Law in Support of Motion to Va-

cate Order of Paternity for [Robert] and Enter Acknowledgment of Paternity and Waiver of Trial for [Father], 9/14/06, at 12.