J-A04002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.F. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.D. | : | |
| | : | |
| Appellant | : | No. 1484 EDA 2020 |

Appeal from the Order Entered July 16, 2020
In the Court of Common Pleas of Bucks County
Domestic Relations at No:  No. 2020DR00395,
PACSES #097300232

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED:  APRIL 23, 2021**

B.D. ("Father") appeals from the order entered July 16, 2020, declaring him the legal father of E.D. ("Child"), a female born in November 2019, and directing that he pay child support.  After careful review, we affirm.

Although the details are not entirely clear from the record, Father began a relationship with C.F. ("Mother") in or before 2017.  N.T., 7/16/20, at 9, 48. Father was incarcerated for about a month starting in February 2019 because of a probation violation.[1]  *Id.* at 18, 28-29.  Once he was released in March 2019, he resumed his relationship with Mother.  *Id.* at 29-30, 40-41.  Mother became pregnant with Child at or near this time.  *Id.* at 44-45.  Father was present at the hospital during Child's birth and, critical to this appeal, signed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Father violated his probation by moving without informing his probation officer.  N.T., 7/16/20, at 17-18.

an acknowledgement of paternity the day after the birth. *Id.* at 30, 36-37.

Three weeks later, however, Father moved out of the home he shared with

Mother and Child, and he has not seen Child since. *Id.* at 31.

On April 27, 2020, Mother filed a complaint for child support. The trial

court entered an interim order on June 23, 2020, following a conference, which

directed Father to pay support. Father requested a *de novo* hearing that same

day. Although the court and the parties indicate that Father filed a motion to

establish paternity and for paternity testing on July 2, 2020, that motion does

not appear in the certified record or on the docket. The record does contain

a motion to stay the proceedings pending the results of a paternity test, which

Father filed on July 13, 2020.

The trial court held the *de novo* hearing on July 16, 2020.[2] In relevant

part, Father testified that Mother told him Child was his child, and that he had

initially believed her. N.T., 7/16/20, at 30, 33. He contended that he learned

Child was not his child after discovering that Mother deceived him regarding

Child's due date. According to Father, Mother told him that Child's due date

was the first week of September. *Id.* at 32. When Child was not born at that

time, Mother insisted that Child would be born "soon." *Id.* at 32-33. However,

Child was not born until November 2019. *Id.* at 34. Father claimed that he

knew a normal pregnancy would only last about forty weeks but believed it

_____

[2] The transcript of the hearing indicates that it took place on July 18, 2020. However, this appears to be a typographical error, as the trial court entered the order resulting from the hearing on July 16, 2020. The scheduling orders in the record also indicate that the hearing would occur on July 16, 2020.

- 2 -

was possible for Child to be born two months late. *Id.* at 34-35. He claimed that he first learned this was not possible while speaking with his mother, I.M., several weeks after Child's birth. *Id.* at 35-38. Father maintained that he now realized Child could not be his child because her conception would have occurred while he was incarcerated in February 2019. *Id.* at 36.

I.M. presented a similar account of the events surrounding Child's birth. She testified that Child's alleged due date changed during Mother's pregnancy, explaining, "we kept hearing September, then October, and then it ended up being November." *Id.* at 24. She recalled that she discussed Child's due date with Father "a few weeks or something" after the birth. *Id.* at 22. During the discussion, Father stated that Child was born two months late, and I.M. replied that a two-month delay "doesn't happen. That's impossible." *Id.* at 23. I.M. testified that Father appeared to be "starting to realize that I was right," but that they did not discuss the issue again. *Id.* at 24.

In contrast to Father's account, Mother testified that she conceived Child in March 2019, following Father's release from incarceration, and that she was induced after thirty-six weeks because it was a high-risk pregnancy.[3] *Id.* at 43-44. Mother acknowledged that Child may not be Father's child but insisted that she had informed Father of that possibility prior to the birth. *Id.* at 51. She explained her decision to contest his request for a paternity test despite this possibility as follows:

_____

[3] Mother did not explain clearly why the pregnancy was high-risk but noted that she "ha[s] had gestational diabetes[.]" N.T., 7/16/20, at 43.

. . . . In 2017 [Father] and I were also pregnant then.  I lost the child at six months.  Since then, [Father] had wanted nothing but a child.  I was honest, Your Honor, with [Father], from the very beginning, that there was a possibility that this was not his child, but because we had lost a baby in 2017, he never made a big deal about it.  He said, no matter what, I'm going to be there, and I'm going to be there for you.  I am going to be there for [Child], and that's what it was.  I'm not saying that he's a hundred percent the father, you're right.

***

. . . . I don't know that, but I'm not saying that he's not the father.  All I am saying is the truth, and that he said that he would be there, so he signed the acknowledgement of the paternity and he gave her his last name.

*Id.* at 48.

Mother presented the testimony of M.W., a mutual acquaintance of the parties and the father of Mother's other child, who corroborated her testimony. M.W. testified that he discussed the issue of paternity with Father while on a trip in July or August 2019.  *Id.* at 9.  M.W. recalled that Father "brought up that it's a little stressful . . .  because of . . . not knowing if he was the father, but he did acknowledge that if . . . he wasn't, he would still be there 100 percent because he loves [Mother.]"  *Id.* at 10-11.

Following the hearing, the trial court entered the order on appeal, ruling that Father was Child's legal father and directing him once again to pay child support.[4]  Curiously, the order also directed that the parties and Child undergo

_____

[4] The order indicated that Father's support obligation would cease effective August 1, 2020, because his income fell below the self-support reserve, but that he would remain obligated to pay any arrears or fees owed.

- 4 -

paternity testing, while specifying that Father would remain Child's legal father "[r]egardless of the results[.]" Order, 7/16/20, at 1 (unnumbered pages). Father timely filed a notice of appeal on August 5, 2020, and Mother timely filed a cross appeal on August 12, 2020. The court entered an order on August 18, 2020, directing that Mother file a concise statement of errors complained of on appeal, and she complied by filing a concise statement on September 3, 2020. Father also filed a concise statement on September 18, 2020, although it does not appear from the record that the court ordered him to do so.[5, 6]

_____

[5] The trial court entered two orders directing the filing of a concise statement, but both orders were identical and applied solely to the "Appellant in Cross-Appeal." Orders, 8/18/20, at 1 (unnumbered pages). We interpret the orders as referring to Mother and not Father, as Mother was the party that filed the cross appeal as well as the plaintiff in the child support proceeding. **See**, **e.g.**, Pa.R.A.P. 2322 ("If a case involves a cross appeal, the plaintiff or moving party in the action below shall be deemed the appellant for the purposes of these rules unless the parties otherwise agree or the court otherwise directs."). At the very least, the orders were ambiguous, and it is unclear whether the court was directing Father to file a concise statement. Even accepting for the sake of argument that the language of the orders was not ambiguous, and the court was directing Father to file a concise statement, our review of the trial court docket does not indicate that Father received notice of the orders. Therefore, we cannot conclude that his concise statement was untimely.

[6] Our Rules of Appellate Procedure provide that this is a children's fast track appeal. **See** Pa.R.A.P. 102 (defining "[c]hildren's fast track appeal" as "[a]ny appeal from an order involving . . . paternity."). As such, the Rules required that Father file a concise statement at the same time as his notice of appeal. **See** Pa.R.A.P. 1925(a)(2)(i) ("In a children's fast track appeal . . . [t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal."). Despite Father's failure to comply with Rule 1925(a)(2)(i), we will accept his concise statement. **See In re K.T.E.L.**, 983 A.2d 745, 747-48 (Pa. Super. 2009) (declining to quash or dismiss the appeal,

- 5 -

Meanwhile, on September 3, 2020, Mother filed a motion to stay the paternity testing pending the outcome of her cross appeal. By order entered September 24, 2020, the trial court vacated the portion of the July 16, 2020 order requiring paternity testing, but directed that all other provisions of the order remain in effect.[7] Mother then discontinued her cross appeal on October 26, 2020. Therefore, we focus our attention solely on Father's appeal in this memorandum, as it is all that remains before the Court.

Father raises the following claims for our review:

1. Did the Court err by failing to vitiate the Acknowledgment of Paternity executed by the [f]ather, because it had been procured by fraud of the [m]other?

2. Did the Court err in not requiring the [m]other to declare who the putative biological fathers might be and in failing to require the [m]other to submit the [c]hild for a paternity test?

Father's Brief at 4 (suggested answers omitted).

_____

or find waiver, where the appellant filed her concise statement three days after her notice of appeal).

[7] It is not clear how the trial court would have jurisdiction to vacate a portion of the July 16, 2020 order over two months after it was entered, and after both parties filed notices of appeal. *See* 42 Pa.C.S.A. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry . . . if no appeal from such order has been taken or allowed."); Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken . . . the trial court or other government unit may no longer proceed further in the matter."). It does not appear, however, that either party appealed the September 24, 2020 order, and Father does not question the court's ability to enter that order in this appeal. Therefore, we need not address the court's jurisdiction here.

- 6 -

Initially, we address Father's defective presentation of his claims in his appellate brief. While Father includes two distinct claims in his statement of questions involved, he presents only a single argument section in his brief, in contravention of our Rules of Appellate Procedure. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein[.]"). Further, Father's argument relates only to the first claim listed in his statement. This argument focuses on Father's contention that Mother procured his signature on the acknowledgment of paternity through fraud. The argument does not develop Father's assertion that the trial court should have ordered Mother to "declare who the putative biological fathers might be" and submit Child for paternity testing, or support that assertion with legal authority.[8] Father's Brief at 4. Thus, we conclude that Father has waived his second claim, and we limit our analysis to his first claim.[9]

_____

[8] Father only mentions his second claim in his summary of the argument. *See* Father's Brief at 8 ("The Court abused its discretion by . . . failing to ask the Mother who the actual father might be.").

[9] Even if Father had developed this claim in his brief, it would still fail for other reasons. As the trial court observes in its opinion, Father did not inquire, or ask the court to inquire, who other potential fathers of Child might be during the hearing. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). In addition, the court's order actually did direct paternity testing. As we explained above, the court later vacated that portion of its order. Regardless, because the court found that Father is Child's legal father, and we discern no abuse of discretion in that assessment, there was no reason to order paternity testing.

Our standard of review is as follows:

> We review support orders for abuse of discretion. We cannot reverse the trial court's support determination unless it is unsustainable on any valid ground. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

**S.M.C. v. C.A.W.**, 221 A.3d 1214, 1217 (Pa. Super. 2019) (citations and quotation marks omitted).

Pennsylvania law provides that the father of a child born to an unmarried mother may sign an acknowledgement of paternity. 23 Pa.C.S.A. § 5103(a). If the mother consents to the acknowledgement of paternity, it then becomes "conclusive evidence of paternity without further judicial ratification in any action to establish support." 23 Pa.C.S.A. § 5103(d). The statute provides only very limited circumstances under which a father may rescind or challenge the validity of an acknowledgment of paternity, as follows:

> **(g) Rescission.—**
>
> > (1) Notwithstanding any other provision of law, a signed, voluntary, witnessed acknowledgment of paternity subject to 18 Pa.C.S.[A.] § 4904 shall be considered a legal finding of paternity, subject to the right of any signatory to rescind the acknowledgment within the earlier of the following:
> >
> > > (i) sixty days; or
> > >
> > > (ii) the date of an administrative or judicial proceeding relating to the child,

- 8 -

> including, but not limited to, a domestic relations section conference or a proceeding to establish a support order in which the signatory is a party.
>
> (2) After the expiration of the 60 days, an acknowledgment of paternity may be challenged in court only on the basis of fraud, duress or material mistake of fact, which must be established by the challenger through clear and convincing evidence. An order for support shall not be suspended during the period of challenge except for good cause shown.

23 Pa.C.S.A. § 5103(g).

Here, as we have explained, Father contends that Mother procured his signature through fraud. To establish fraud for the purposes of invalidating an acknowledgement of paternity, a party must prove the existence of "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result." **R.W.E. v. A.B.K.**, 961 A.2d 161, 167 (Pa. Super. 2008) (quoting **B.O. v. C.O.**, 590 A.2d 313, 315 (Pa. Super. 1991)). Further, we have clarified that a "misrepresentation" in this context is not limited to one party making an untruthful statement to the other:

> A misrepresentation need not be an actual statement; it can be manifest in the form of silence or failure to disclose relevant information when good faith requires disclosure. Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact or by silence when good faith required expression. Fraud comprises anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood

or innuendo, by speech or silence, word of mouth, or look or gesture.

*Id.* at 167-68 (quoting *Glover v. Severino*, 946 A.2d 710, 713 (Pa. Super. 2008)) (emphasis omitted).

Father's first claim amounts to a challenge to the trial court's credibility findings. Father directs our attention to the testimony presented during the hearing and insists that it shows Mother was perjuring herself. Specifically, he contends that Mother did not admit he might not be Child's father until the hearing, and did so only under cross-examination by the court. Father's Brief at 7, 16-19. He claims Mother duped him into signing the acknowledgment of paternity by telling him that Child was born two months late, and that he did not learn it was impossible for Child to be born two months late until he spoke with his mother, I.M. *Id.* at 7, 17-20. Father adds that I.M. testified at the hearing and corroborated his explanation. *Id.* at 7, 17.

The trial court addressed this claim in its opinion as follows, in relevant part:

> . . . . Father had notice of his rights if he wished to rescind his Acknowledgment within 60 days and he failed to do so. Father did not try to rescind his Acknowledgement of Paternity until July 2, 2020, even though his [m]other allegedly told him that the baby was not his child in November, 2019.
>
> In his Petition, Father claimed fraud that Mother lied to him and said he was the [f]ather. Father failed to meet his burden of demonstrating by even a preponderance of the evidence that Mother lied to him. Mother was very credible in her testimony as to what she told Father about the [p]aternity of [Child]. Father was not.

Father's first claim must fail because this Court found Mother to be very credible. We also note that Father did not take the stand (after) Mother testified to refute her claim that she suffered a miscarriage in 2017. Moreover, despite Father's claim in his first issue of his concise statement that Mother lied in Court, the record fails to support his assertion. At no point did Mother say she told [Father] unequivocally that he was the [f]ather. As to her disclosure that he may not be the [f]ather, [Father] decided to still assume that role.

Trial Court Opinion, 9/29/20, at 5.

We discern no abuse of discretion in this analysis. It is undisputed that Father signed an acknowledgment of paternity the day after Child's birth in November 2019, and that he did not attempt to rescind that acknowledgment within sixty days pursuant to Section 5103(g)(1)(i). Father conceded during the hearing that he did not attempt to challenge the acknowledgement until July 2020, about eight months after he signed it. N.T., 7/16/20, at 39. Thus, Father could only challenge his paternity of Child by proving fraud, duress, or material mistake of fact pursuant to Section 5103(g)(2).

While Father contends that he signed the acknowledgment of paternity because of Mother's fraud, our review of the record supports the trial court's determination that no fraud occurred. *See* **R.W.E.**, 961 A.2d at 166 (if our review supports the trial court's findings, we cannot disturb them); **Vargo v. Schwartz**, 940 A.2d 459, 462 (Pa. Super. 2007) (the trial court is free to accept some, all, or none of the evidence, and to make weight and credibility determinations). Mother testified that she was honest with Father "from the very beginning" that he might not be Child's father. N.T., 7/16/20, at 48. The

- 11 -

parties' mutual acquaintance, M.W., corroborated this testimony, recalling that Father admitted "not knowing if he was the father" in July or August 2019, during Mother's pregnancy. *Id.* at 9-11. Indeed, Father's own assertions belie his claim of fraud. Father testified that he learned Child was not his child several weeks after her birth, when his mother, I.M., informed him that it was impossible for Child to be born two months late. *Id.* at 35-38. Despite this alleged revelation, Father did nothing to challenge his paternity at that time.

Accordingly, because the record supports the trial court's findings, we conclude that the court did not abuse its discretion by ruling that Father is Child's legal father and directing him to pay child support. We therefore affirm the court's July 16, 2020 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/21