J-A19020-22

2023 PA Super 2

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| V.L.-P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.R.D. | : | |
| | : | |
| Appellant | : | No. 477 MDA 2022 |

Appeal from the Order Entered February 18, 2022
In the Court of Common Pleas of Lebanon County Domestic Relations at
No(s):  2020-5-0545

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.*

CONCURRING OPINION BY BOWES, J.:                    **FILED:  JANUARY 6, 2023**

I join my esteemed colleagues' decision to vacate the order denying Appellant's petition for genetic testing.  I write separately to highlight my viewpoint that where, as here, there is no intact marriage to preserve through the presumption of paternity and a father seeks to rescind his formal acknowledgment of paternity pursuant to 23 Pa.C.S. § 5103(g)(2), based upon an allegation of fraud, duress, or the mistake of material fact, the threshold question should be whether a genetic relationship exists.  Indeed, insofar as genetic testing is dispositive of parentage, any allegation of fraudulent inducement is relevant **only** if a genetic relationship is absent.  Thus, I believe the better practice is for trial courts to permit a party to

_____

* Former Justice specially assigned to the Superior Court.

scientifically refute the genetic relationship at the outset, and after that preliminary matter is resolved, determine whether paternity by estoppel applies under the particular facts and circumstances of that case.

Appellant sought to rescind his written acknowledgment of paternity under § 5103(g)(2), which is outlined in the portion of the Domestic Relations code relating to children and minors. The interrelationship between a § 5103(g)(2) rescission and the common law doctrine of paternity by estoppel is best illustrated by the fact that the two principles require identical considerations in determining the effect of fraud in the formation of the parental relationship. For example, just as proof of fraud will defeat the application of paternity by estoppel, the same facts would provide a basis to rescind an acknowledgment of paternity pursuant to § 5103. **Compare R.W.E. v. A.B.K.**, 961 A.2d 161 (Pa.Super. 2008) (applying five-prong approach to determine fraud in the context of rescinding acknowledgment of paternity under § 5103(g) and **Doran v. Doran**, 820 A.2d 1279, 1283-84 (Pa.Super. 2003) (outlining identical "test for fraud" to determine whether to apply paternity by estoppel).

Recognizing that the two concepts are coextensive, I also acknowledge that the legal fiction embodied in paternity by estoppel is traditionally applied regardless of science. **See e.g. Fish v. Behers**, 741 A.2d 721 (Pa.Super 1999) (noting estoppel is legal determination that precludes parent from denying parentage regardless of true biological parentage); **DeRosa v.**

*Gordon*, ___ A.3d___, 2022 PA Super 198, *5 (filed November 22, 2022), 2022 WL 17099037 (quoting **Fish**, **supra** approvingly in sustaining trial court's determination that the doctrine did not bar paternity claim of likely biological father who had been involved with child since birth). This perspective is also reflected in our procedural rules governing paternity disputes in child support cases, which permits a trial court to stay genetic testing until the applicability of estoppel has been determined. **See** Pa.R.C.P. 1910.15(c) ("If either party or the court raises the issue of estoppel or the issue of whether the presumption of paternity is applicable, the court shall dispose promptly of the issue and may stay the order for genetic testing until the issue is resolved.").

Nevertheless, this reality does not mean that trial courts are constrained to ignore biological truths in order to apply a legal fiction. Indeed, in upholding the continuing efficacy of paternity by estoppel, our Supreme Court recognized, "[a]bsent any overriding equities in favor of the putative father, **such as fraud**, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized." **K.E.M.**, **supra** at 807 (emphasis added). It continued,

> The legal fictions perpetuated through the years (including the proposition that genetic testing is irrelevant in certain paternity-related matters) retain their greatest force where there is truly an intact family attempting to defend itself against third-party intervention. In cases involving separation and divorce, we direct that the Uniform Act on Blood Tests to Determine Paternity is now to be applied on its terms insofar as it authorizes testing. At the very least, the identification of [the] biological father is a relevant fact for purposes of determining who should pay for the

services of a guardian *ad litem* to vindicate [the child's] best interests.[9] A biological father can do at least this much.

_____

[9] While at this time we do not hold that a guardian *ad litem* is necessarily required in all cases, at this juncture in the present case, we believe an appointment is advisable.

*Id*. at 809–10 (internal citation and footnotes omitted).

Thus, the ***K.E.M.*** Court understood that the application of a legal fiction to limit the relevancy of genetic testing retained its "greatest force where there is truly an intact family attempting to defend itself against third-party intervention." ***Id***. at 810 n.8. As it relates to invoking estoppel to circumvent allegations of fraud, the ***K.E.M.*** Court reserved its decision, noting that since the putative father did not assert that he was deluded into believing that he was the birthfather, "the strongest case for 'overriding equities' [,such as fraud,] is not present[.]" ***Id***. at 808 n.7. Hence, while the ***K.E.M.*** Court's holding did not confront this precise issue, its rationale plainly supports the notion that where, as here, there is neither a marriage to protect nor a third-party intervenor, scientific advancements and the evolving perception of family militate against the mechanical application of paternity by estoppel to defeat a colorable allegation of fraud.

From my perspective, mindful of the accessibility, affordability, and reliability of DNA tests, I believe that the flaws associated with permitting rote assertions of estoppel to bar testing are particularly evident in the case at bar, where there is neither a marriage or intervenor and Appellant made a genuine claim that his acknowledgment of paternity was the result of Mother's

duplicity, dishonesty, and deceit. Even ignoring the results of the genetic testing conducted by Ancestory.com, Appellant adduced sufficient evidence to support his claim of fraud. He presented evidence that Mother engaged in fraud by failing to notify him that he may not be the biological father or that she had contracted chlamydia, a sexually transmitted disease, prior to the child's birth. Moreover, as succinctly summarized in the majority opinion, Mother failed to disclose that she was previously engaged to the probable biological father around the time of A.D.'s conception and had motive to deny her relationship with that person due to his status as a convicted sexual offender. *See* Majority Opinion at 31-32. As my learned colleagues accurately observe, "In the absence of genetic testing or an admission by Mother to engaging in sexual relations with someone else around the time of [A.D.'s] conception, . . . Appellant will be unable to prove his fraud claim." *Id*. at 32. Insofar as genetic testing is unquestionably the preeminent means of determining a child's parentage, giving genetic testing sequential primacy over the resolution of an estoppel claim will prevent this inequitable dichotomy in future cases.

Accordingly, for all of the foregoing reasons, I believe that the General Assembly or our Supreme Court[1] should revisit the legal fiction created by paternity by estoppel in light of the advancements in testing and our

---

[1] For example, the Supreme Court may elect to revise Pa.R.C.P. 1910.15(c) so it no longer authorizes a trial court to stay genetic testing pending the resolution of an estoppel claim in child support litigation.

contemporary perspective of family and fashion a flexible approach that affords trial courts both the ability to order genetic testing at the outset of these cases and the discretion to weigh scientific evidence of paternity in line with § 5104(c) and (g) of the Uniform Act on Blood Test to Determine Paternity, which the High Court found to authorize genetic testing in paternity cases "involving separation and divorce," *i.e.*, in the absence of an intact marriage. ***Id***. at 809-810.